NO. 07-11-0044-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 25, 2012
_____

ANTHONY BRINKER AND KELLY BRINKER,

                                                            Appellants
                                    v.

JIMMY EVANS, Individually and d/b/a
JIMMY EVANS COMPANY, LTD.,

                                                            Appellee
_____

FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-09-000254; HONORABLE JEFF ROSE, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Anthony Brinker and his wife Kelly (the Brinkers) appeal from a judgment denying them recovery against Jimmy Evans, individually and d/b/a Jimmy Evans Company, Ltd. (collectively referred to as Evans). The former sued the latter to recover damages for injury sustained after an eighteen-wheeler tractor trailer driven by Anthony Brinker fell off a road into a caliche pit. In seeking to reverse that judgment, the Brinkers contend that the trial court erred in 1) granting a directed verdict on their claims of negligence, negligence per se, negligent hiring, management and supervision, and gross

negligence, 2) excluding evidence of several federal and state statutes pertaining to safety measures applicable at certain locales, 3) excluding the testimony of the Brinkers' expert witness, 4) allowing evidence of other accidents and sleeping incidents involving Anthony Brinker, and 5) instructing the jury on sole proximate cause. They also complain about the legal and factual sufficiency of the evidence underlying the jury's verdict. We affirm the judgment.

*Background*

Evans was in the business of preparing sites for construction. As part of that operation, it leased a caliche pit in Medina County. Anthony Brinker worked for a trucking company that hauled caliche from the pit to the sites being prepared. The accident at bar occurred as he attempted to leave the pit with a full load.

Egress from the area involved driving on a dirt and gravel road adjacent to the hole. The road was allegedly wide enough to allow two vehicles to pass each other. Furthermore, Evans had spaced multi-ton boulders between its edge and the pit to act as barriers. On the day of the accident, Anthony Brinker, who was familiar with the area, had acquired his load and began to leave. After negotiating a ninety-degree turn, he proceeded down the boulder-lined dirt road with the drop-off and boulders to his left. After travelling about three hundred to three hundred eighty five feet, his truck left the surface of the roadway. Witnesses saw no effort on his part to stop. Nor did the boulders impede his drop of thirty feet into the hole. Upon exiting the truck once it hit bottom, Anthony Brinker asked what had happened and indicated that he had heard the crunch of gravel and felt his vehicle shudder before leaving the road. He would later argue that the road collapsed from under him.

Pictures of the scene revealed that the road contained a layer of gravel extending from the boulders into the road for several feet. And, at the point where Anthony Brinker's vehicle dropped off, two furrows can be seen. Witnesses at trial testified that the furrows or collapsed portion of the road were caused by the truck itself as it fell. And, as illustrated by the pictures given the jury, none of the furrows extended across the graveled area or into the road itself. Additionally, Anthony Brinker conceded that the accident would not have occurred had he driven on the right side of the roadway.

As previously mentioned, the Brinkers sued Evans and alleged causes of action for negligence, negligence per se, gross negligence, and negligent hiring, supervision and management. The trial court directed a verdict against them on all but one of their claims. The one that was submitted spoke of negligence, encompassed the theory of premises liability, and asked the jury to determine whether the negligence, if any, of either Anthony Brinker or Evans caused the accident. The jury answered that Anthony Brinker's negligence did.

*Sufficiency of the Evidence – Is There Evidence of Brinker's Negligence?*

The first issue we consider is the allegation that the evidence was legally and factually insufficient to sustain the jury's verdict. We disagree and overrule the contention.

No doubt, the Brinkers had the burden to prove the sole claim of negligence submitted against Evans. And, as mentioned earlier, the jury answered "no" when asked if the company was negligent. Since they now attack that answer as legally insufficient, it is encumbent upon them to show, as a matter of law, that Evans was not only negligent but also that its negligence caused Anthony Brinker's injuries. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (holding that "[w]hen a party

3

attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue"). In determining whether this was done, we view the evidence in a light most favorable to the verdict and credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827-28 (Tex. 2005). To determine whether the finding was supported by factually insufficient evidence, we weigh all of the evidence and set the verdict aside only if the evidence is so weak or if the finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Dow Chemical Co. v. Francis,* 46 S.W.3d at 242.

Appearing of record is evidence that 1) Anthony Brinker had driven the road many times before and knew what the boulders signified, 2) there was enough space between the boulders and the other side of the road to allow for two lanes of traffic, 3) Anthony Brinker admitted the accident would not have happened had he stayed on the right-hand side of the road, 4) Anthony Brinker did not attempt to brake his vehicle or steer away from the drop-off before the accident, 5) the road crumbled because the truck took it down as it fell, 6) the accident occurred three hundred to three hundred eight five feet from the corner that Anthony Brinker had to negotiate to leave, 7) he had ample room to straighten out the vehicle after making the turn, and 8) two eyewitnesses testified that Anthony Brinker simply drove his truck over the side. This is some evidence on which a rational jury could find that Evans' non-feasance, if any, did not cause the accident. Because we find evidence that supports the jury's finding, we need not consider further whether the Brinkers established Evans' negligence as a matter of law. *Id.* at 242.

4

And, while Evans did not erect a berm or guardrail or obtain engineered safety systems, there was also evidence that a berm would have been no more effective and less visible than the boulders and that an engineering study was not required because the road already was reasonably safe.   So, we cannot say that the evidence supporting the jury's verdict was weak or so against the great weight of all the evidence as to render the verdict clearly wrong.

*Directed Verdict*

Next, the Brinkers argue that the trial court erred in directing a verdict on the claims of 1) negligence, 2) negligence per se, 3) negligent hiring, management and supervision, and 4) gross negligence.   Evidence presented of record allegedly warranted the submission of each chose-in-action.   In response, Evans posits, among other things, that the choses-in-action were irrelevant given the manner in which the purported injuries arose.   We overrule the issue.

According to the Brinkers' live pleadings, the claims of negligence all involved the condition of the road and surrounding premises on which he was obligated to drive.[1] Either the common law or various statutory edicts obligated Evans to address the dangerous conditions posed by the road and its juxtaposition to a rather deep pit, they continued.   And because remedial and ameliorative efforts to negate the risk of danger were not undertaken, the Brinkers accused Evans of being negligent, negligent per se, and grossly negligent.   But, therein lies the problem. The circumstances about which they complain cannot be prosecuted via such causes of action.

---

[1] It contained "dangerous conditions," posed "an unreasonable risk of harm to . . . ," was not safe on the occasion in question," "was not engineered" at the "brink's edge," lacked "signage, roadway dividers, guard rails, retaining walls, or other safety systems," lacked "adequate berms and barriers," was "improperly designed" and "defective," and was not designed or maintained "in a safe manner."   And, because of all these purported deficiencies and instances of neglect of which Evans knew or should have known and disregarded, the roadway supposedly collapsed and caused Anthony Brinker to suffer injury.

5

The Brinkers do not suggest that any contemporaneous or affirmative activity being undertaken by Evans or any of its employees caused Anthony Brinker injury. Rather, his injury arose from conditions appearing on the land over which Anthony Brinker traveled. And, injuries so caused may only be redressed under the theory of premises liability. *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992); *Wyckoff v. George C. Fuller Constr. Co.,* 357 S.W.3d 157, 163-64 (Tex. App.–Dallas 2011, no pet.); *accord Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (noting the difference between suits founded upon negligent activity on land and those founded upon a condition of the premises itself and stating that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe and holding that the case was properly tried and submitted as a premises liability case, since Smith primarily complained of Del Lago's nonfeasance, that is, its failure to remedy an unreasonably dangerous condition for ninety minutes and failure to react promptly once the fight started). Indeed, when asked by the trial court if the case was "really a negligence case or . . . more a premises liability case . . . ," counsel for the Brinkers replied that "[i]t's a premise liability case . . ." requiring proof of the standard of care. Moreover, the rule expressed in *H.E. Butt, Del Lago,* and *Wyckoff* cannot be avoided through "'[a]droit phrasing of the pleadings to encompass design defects, per se negligence or any other theory of negligence . . . .'" *Wyckoff v. George C. Fuller Constr. Co.,* 357 S.W.3d 357 S.W.3d 157, 163-64 (Tex. App.–Dallas 2011, no pet.) (*quoting McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d 167, 171 (Tex. App.–

6

Dallas 1994, writ denied)). So, the trial court was not obligated to submit general theories of negligence, gross negligence, and negligence per se.

The same is also true of the allegation pertaining to negligent hiring and supervision. Evans allegedly was nonfeasant by failing to hire an engineer or other personnel to adequately design or inspect the road or otherwise render it safe for "invitees" encountering the hazardous conditions upon it. This nonfeasance, according to the verbiage appearing in his live pleading, "created conditions and an environment in which injury to invitees was likely and reasonably foreseeable to occur, and which in fact did occur . . . ." Given the nature of the allegations and their involvement with the failure to remedy conditions appearing on Evans' realty, they were nothing more than an adroit rephrasing of a premises liability claim and, therefore, irrelevant.

*Exclusion from Evidence of Federal and State Statutes*

Next, we consider the complaint about excluding evidence of various federal and state statutes. The statutes at issue were the Mine Health and Safety Act, the Occupational Safety and Health Act, and the Pit Quarry and Safety Act. The Brinkers thought them relevant to their negligence and negligence per se allegations. That is, they were not trying to pursue causes of action created by those statutes, but rather to use them to prove Evans was negligent and negligent per se, and the requirements of those statutes coupled with an alleged failure to abide by them supposedly constituted evidence of that negligence. So, the dispute before us is evidentiary in nature. That is, we are asked to determine whether the trial court erred in excluding evidence the Brinkers deemed pertinent to their claims.

Being a decision involving the admission or exclusion of evidence, we review it under the standard of abused discretion. *State v. Bristol Hotel Asset Co.,* 65 S.W.3d

7

638, 647 (Tex. 2001). Thus, if the ruling comports with guiding rules and principles and is not otherwise arbitrary or capricious, then we cannot disturb it. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985) (so describing the standard of abused discretion). Moreover, the burden lies with the appellant to not only prove an instance of abused discretion but also harm arising from it. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992); *In re R.A.L.*, 291 S.W.3d 438, 446 (Tex. App.– Texarkana 2009, no pet.).

As previously discussed, the Brinkers' claim against Evans sounded in premises liability. Claims of negligence and negligence per se were not mechanisms through which they could have recovered. Given this, the trial court was not obligated to admit the statutes as evidence fostering the prosecution of those particular claims.[2]

We further note that the Brinkers fail to explain how they were harmed by their exclusion, even if the legislative edicts were somehow pertinent. Instead, they simply mention that they were harmed by their exclusion. Discussion about how the result would have differed had proof of the statutes been admitted went missing, as did discussion about how undertaking any of the remedial or investigative measures would have prevented Anthony Brinker from driving off the road or suffering injury.[3] Thus, the

---

[2]This is not to say that the standards were irrelevant to the premises liability allegation. We do not address that matter for it was not raised by the Brinkers.

[3]Brinker does assert in his brief that an expert "confirmed that the truck probably would not have gone through a concrete traffic barrier . . . and that a berm could have contained the vehicle." Reviewing that portion of the record cited as support for those propositions discloses testimony that there "are possibly berms that might have contained the vehicle," that "it would have to be a pretty amazing berm to do that," that "I'm not saying it's physically impossible, but it's not terribly likely," that "I can't say that it would be reasonable to expect that kind of berm adjacent to a pit road," "we don't use berms to contain vehicles on roadways," "a berm would not be nearly as visible as [the] rocks [that were present]," that concrete barriers are used "to keep cars on a roadway in a high-speed highway environment," that concrete barriers are "very, very rarely used on a gravel road," and "[i]f you put a . . . barrier up like you did on I-35 . . . I don't think the truck probably would have gone through that at 10 or 15 miles an hour . . . [but] [i]f you simply put sections of concrete traffic barrier out there, [the truck] could perhaps have overcome that New Jersey barrier, the concrete barrier." These passages show that the assertions made

8

Brinkers failed to carry their burden on appeal, which, in turn, obligates us to overrule the issue.

*Exclusion of Expert Witness*

Next, the Brinkers complain of the trial court's decision to exclude the testimony of their expert, Dr. Yildirim. Their argument is twofold. First, they posit that because a different judge assigned to consider the matter before trial held it admissible, the judge trying the case had to defer to the ruling. Next, they argue that the witness was qualified to opine that the road collapsed and that the collapse caused the accident. We overrule the issue.

As for the proposition that the ruling could not be changed, it does appear that the matter of Yildirim testifying was addressed pretrial by a jurist other than the one who ultimately tried the case. Furthermore, the first judge did permit him to testify. But once trial began, counsel for Evans re-urged its complaints about the witness, with which complaints the judge presiding over the actual trial agreed. So, what we have before us is a situation in which the trial *court* changed its mind. Can it do that while it retains plenary jurisdiction over the dispute? We whole-heartedly say yes, as did the Texas Supreme Court in *In re Baylor Med. Center at Garland*, 280 S.W.3d 227, 231 (Tex. 2008). "'A trial court's plenary jurisdiction gives it not only the authority but the

by the Brinkers above are somewhat out of context. As suggested by the expert, most anything is possible, but possibilities as opposed to reasonable probabilities are not evidence. *Plunkett v. Conn. Gen. Life Ins. Co.,* 285 S.W.3d 106, 118-19 (Tex. App.–Dallas 2009, pet. denied). More importantly, we have been cited to no evidence indicating what size of berm would or could have worked or whether it was even feasible to install a berm of that unknown size on the road. Nor were we cited to any provision within the statutes or regulations at issue requiring the erection of the "pretty amazing" berm contemplated by the expert or of I-35 type concrete barriers on a private dirt road where travel proceeds slowly. And, as for the reference to concrete barriers, one could interpret the Brinkers' argument as effort to impose upon Evans the duty to install on its private, gravel/dirt road safety devices designed for and used on interstate highways. Indeed, much of the evidence about available safety measures that they discussed concerned measures utilized on major traffic arteries, like I-35, as opposed to private dirt roads. Comparing apples to oranges or talking about non-specific "what ifs" provides us with little basis on which to find harm.

9

responsibility to review any pre-trial order upon proper motion.'" *Id.*, *quoting Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex. 1985).

As for the question of whether the court's decision was wrong, the Brinkers proffered Yildirim as a soil engineer expert who would opine on what caused the vehicle to leave the roadway. In particular, he intended to testify that it was "possible," "probable" or "likely" that the ground underneath the eighteen-wheeler collapsed which caused the vehicle to fall into the pit. Furthermore, the Brinkers believed Yildirim qualified to so opine because of his educational background, experience, observation of pictures taken immediately after the incident, and journey to the accident site several years later.

Yet, the trial court characterized Yildirim's testimony as speculation "about possibilities." It based its observation upon the "fact that he is not an accident reconstructionist," "the fact that he doesn't seem to have done the work that even might help someone in his discipline do this," his admission "throughout that it would take soil testing to determine whether any of the many possibilities that he sees actually occurred . . . ." and those tests were not taken, and his delay in going to the scene "until years later" (and after it had been altered by Evans). So, the testimony was excluded due to its unreliability.

As with the prior issue, this one also involves the exclusion of evidence and is controlled by the same standard of review-abused discretion. *Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 629 (Tex. 2002). So we must determine whether it deviated from controlling guidelines and principles. Next, one such principle tells us that an expert's testimony is unreliable if it is not grounded in methods and procedures of science and is no more than subjective belief or unsupported speculation. *E.I. du Pont*

10

*de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 557 (Tex. 1995). That rule prevents us from deeming the trial court's decision an example of abused discretion.

Yildirim's expert report and deposition appear in the record. Through them, we see that he is an expert related to pavements but not an accident reconstructionist. We further note his concession that there were two possible scenarios explaining what occurred. The first involved the road actually collapsing. The second concerned Anthony Brinker merely driving off the edge of the road into the pit. Yildirim also acknowledged that he engaged in a "number of assumptions" because the ". . . study was entirely based on photographs and since no soil testing was done." Other admissions of his were 1) that "[w]hether or not it [was] safe for trucks to travel along the road adjacent to the cliff can be confirmed only by conducting an elaborate slope stability analysis and detailed soil testing" and 2) that while he had doubts about the stability of the cliff's slope, his "findings cannot be conclusive unless detailed soil testing and slope stabililty analysis are done." But, again, none were. To this, we add the evidence that Yildirim did not visit the accident scene until several years later. By then, Evans had altered the road and pit.

At this point, we harken back to another guiding principle. It tells us that the mere possibility rather than reasonable probability of causation is no evidence. *Schaefer v. Tex. Employers' Ins. Ass'n,* 612 S.W.2d 199, 204-05 (Tex. 1980); *W.C. LaRock, D.C., P.C. v. Smith*, 310 S.W.3d 48, 56-57 (Tex. App.–El Paso 2010, no pet.); *Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 118-19 (Tex. App.–Dallas 2009, pet. denied); *see also Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711-12 (Tex. 1997) (stating that causation opinions based on possibility, speculation, and surmise are not evidence). Given the timing of Yildirim's investigation, his

assumptions, his failure to undertake tests he admitted were necessary, and his recognition of at least two differing scenarios related to causation, a jurist could rationally conclude that his opinions were little more than statements about possibilities as opposed to reasonable probabilities and, therefore, unreliable. So, the trial court did not abuse its discretion when it excluded them.

*Admission of Other Accident and Napping*

Next, the Brinkers complain of the trial court's decision allowing Evans to introduce evidence of another vehicle accident involving Anthony Brinker as well as instances of him having been caught napping. They contend that it was inadmissible under Texas Rules of Evidence 403 and 404. We overrule the issue.

Again, the burden lay with the Brinkers to not only establish error but also illustrate that it probably caused the rendition of an improper verdict. *McCraw v. Maris*, 828 S.W.2d at 758; *In re R.A.L.*, 291 S.W.3d at 446. And, while the Brinkers discuss the merits, or lack thereof, underlying the decision to admit the evidence in question, they say nothing of how it affected the outcome. Thus, they failed to show themselves entitled to reversal. Yet, even if we were to assume that the decision was wrong and undertake, *sua sponte*, a harm analysis, we would have to conclude that admission of the evidence did not probably cause the rendition of an improper judgment.

Anthony Brinker conceded that he was partially responsible for the incident and that it would not have occurred had he driven on the right, as opposed to the left, side of the road. An eyewitness also testified that Anthony Brinker simply drove off the edge without attempting to brake and that any collapse in the road was caused by the vehicle itself as it dropped into the pit. Moreover, pictures of the scene taken immediately after the accident disclose an intact road, as opposed to one that collapsed. Given this and

12

the rather large body of evidence supporting the verdict, we can but only conclude that the admission of the evidence in question was harmless.

*Instruction on Sole Proximate Cause*

The final issue we address concerns the trial court's decision to instruct the jury on sole proximate cause. The Brinkers contend that it should not have done so because "the jury may have believed that defendant's site manager [who was not a party] . . . was at fault because he failed to abide by Curtis Griffin's instruction to erect a solid barrier wall" as opposed to a wall consisting of intermittently spaced boulders. We overrule the issue.

Per the instruction, the jurors were told not only that there "may be more than one proximate cause of an event" but also that "if an act or omission of anyone who is not a party to the suit was the 'sole proximate cause' of the occurrence, then the act or omission of any party could not have been a proximate cause." The trial court then instructed them to determine whether either or both Anthony Brinker and Evans were negligent. They answered "yes" as to Anthony Brinker and "no" as to Evans. This is of import because irrespective of whether the trial court had legitimate basis to submit the foregoing instruction, the ultimate verdict rendered the purported mistake meaningless.

That is, the instruction allowed the jury to consider whether someone other than the parties could have solely caused the incident. Yet, it answered that only the negligence of Anthony Brinker, a party to the suit, proximately caused the occurrence. So, it did not matter if the jury was told that causation could be attributed to some stranger to the litigation; it attributed both negligence and causation to an actual party. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) (stating that 1) the submission of an improper jury question can be harmless error if the jury's answers to

13

other questions render the improper question immaterial, 2) a jury question is considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict, 3) an immaterial issue is not harmful error unless the submission confused or misled the jury, and in determining whether a particular question could have confused or misled the jury, we consider its probable effect on the minds of the jury in the light of the charge as a whole); *Crowson v. Bowen*, 320 S.W.3d 486, 489 (Tex. App.–Fort Worth 2010, no pet.) (stating the same). And, because the jury would have had to ignore the sole proximate cause instruction to arrive at the decision it did, we cannot see how the verbiage confused or misled the factfinder.

Having overruled all issues, we affirm the judgment.


Brian Quinn
Chief Justice