

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00147-CV

### IN RE: THE COMMITMENT OF GEORGE WELDON SMITH

On Appeal from the 147th District Court
Travis County, Texas
Trial Court No. D-1-GN-16-001474, Honorable Michael Lynch, Presiding

## November 7, 2018

## OPINION

### Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant George Weldon Smith appeals from a final judgment and order of civil commitment, arguing the evidence was insufficient to support such an order and that the trial court committed fundamental error. We will affirm.

Background

In 1993, Smith was convicted by a Travis County jury of aggravated sexual assault of a child[1] and of indecency with a child by contact.[2] The indictment alleged, in a first

---

[1] *See* TEX. PENAL CODE ANN. § 22.021 (West 2018).

[2] *See* TEX. PENAL CODE ANN. § 21.11 (West 2018).

count containing two paragraphs, that Smith caused penetration of his male victim's anus by Smith's finger, and that he caused the victim's sexual organ to contact Smith's mouth. In a second count, the indictment alleged Smith engaged in sexual contact with the same victim by touching the victim's genitals. The indictment alleged all three offenses occurred "on or about" the 15th of July, 1986, and both of the judgments of conviction state that date as the "date of offense." He received a sentence of twenty years' confinement in the Institutional Division for the indecency offense, and a life sentence for the aggravated sexual assault.

In April 2016, the State of Texas filed a petition in Travis County alleging Smith is subject to civil commitment as a sexually violent predator.[3] Smith denied the petition's allegation. The matter of Smith's civil commitment was tried before a jury and it returned a unanimous verdict declaring Smith to be a sexually violent predator as defined by section 841.003 of the Health and Safety Code.[4] Based on that finding, the trial court entered a final judgment and an order of civil commitment. Smith filed a motion for new trial that was overruled by operation of law. This appeal followed.

---

[3] TEX. HEALTH & SAFETY CODE ANN. § 841.041(a) (West 2015). Chapter 841 of the Texas Health and Safety Code, providing for civil commitment of sexually violent predators, was enacted in 1999. It was amended in 2015 to require suits to be initiated in the county where the alleged sexually violent predator was convicted of his most recent sexually violent offense.

[4] In this opinion, unless otherwise indicated, references to statutory provisions are to Chapter 841 of the Health and Safety Code.

Analysis

Smith challenges the trial court's order and final judgment by five issues, asserting the jury had before it insufficient evidence to support its findings and asserting the concept of fundamental error applies, requiring reversal.

A commitment proceeding under chapter 841 is civil in nature. *In re Commitment of Fisher,* 164 S.W.3d 637, 653 (Tex. 2005). After a petition alleging a person is a sexually violent predator is filed, the issue is determined at a trial at which the person or the State is entitled to a jury trial on demand.[5] The determination the person is a sexually violent predator must be made beyond a reasonable doubt and, if by jury, the verdict must be unanimous.[6] If the finder of fact determines that the person is a sexually violent predator, "the judge shall commit the person for treatment and supervision" to be conducted by the Texas Civil Commitment Office.[7]

For purposes of the civil commitment statute, a sexually violent predator is "a repeat sexually violent offender [who] suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *In re Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012) (citing § 841.003(a)). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person."

---

[5] §§ 841.041; 841.061. *See Fisher,* 164 S.W.3d at 642.

[6] § 841.062.

[7] §§ 841.081; 841.002(4).

*Id.* (citation omitted). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Watts,* No. 09-14-00404-CV, 2015 Tex. App. LEXIS 8485, at *12 (Tex. App.—Beaumont Aug. 13, 2015, no pet.) (mem. op.) (quoting *In re Commitment of Almaguer,* 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied)).

Issues One and Two – Repeat Sexually Violent Offender

Subsection 841.003(a) defines a sexually violent predator as follows:

(a)  A person is a sexually violent predator for the purposes of this chapter if the person:

> (1)  is a repeat sexually violent offender; and
>
> (2)  suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.
>
> TEX. HEALTH & SAFETY CODE ANN. § 841.003 (West 2015).

Subsection (b) of that section reads, in part, "A person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses . . . ."

By his first issue, and primary argument in the appeal, Smith contends the proof he is a repeat sexually violent offender is legally insufficient.  His second issue asserts the evidence supporting that finding is factually insufficient.

4

As noted, proof that a person is a sexually violent predator must meet the beyond-a-reasonable-doubt standard. When an appellate court reviews the legal sufficiency of the evidence supporting the determination, it assesses all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment. *In re Commitment of Tesson,* 413 S.W.3d 514, 522 (Tex. App.—Beaumont 2013, pet. denied); *Watts,* 2015 Tex. App. LEXIS 8485, at *11 (citation omitted). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Watts,* 2015 Tex. App. LEXIS 8485, at *11 (citation omitted). Under a factual sufficiency review in a sexually violent predator commitment proceeding, we weigh all the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.* (citing *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied)).

By his first and second issues, Smith urges the evidence is insufficient to prove beyond a reasonable doubt he is a repeat sexually violent offender, because he was convicted on a single occasion of offenses against a single victim in a single criminal episode. He refers to himself as a "first time offender," and points out his offenses do not fit the pattern of other sexually violent predator commitment cases in which the offender was convicted of offenses involving multiple victims,[8] or that of cases in which "the person

---

[8] *See, e.g., In re Commitment of Lopez,* 462 S.W.3d 106, 114 (Tex. App.—Beaumont 2015, pet. denied) (offenses against two victims).

5

committed a sexual offense, was detected and punished, and then committed another sexual offense upon release."[9]

Although couched as an evidentiary sufficiency challenge, Smith's argument raises a question of statutory interpretation. He concedes he was convicted of more than one sexually violent offense and had sentence imposed for at least one of them, and concedes that, under the plain language of the statute, he thus qualifies as a repeat sexually violent offender. Nonetheless, he argues, because the Legislature stated in Chapter 841 its findings that long-term supervision and treatment was appropriate for the "small but extremely dangerous group of sexually violent predators," and that the statute was aimed at those "likely to engage in repeated predatory acts of sexual violence," it should be obvious that the statute was intended to deal with recidivists.[10] Smith argues he does not fit such a category.

The Texas Supreme Court often has stated that a statute's plain language is the surest guide to the Legislature's intent. *See, e.g., Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012); *see also In re Xerox Corp.,* 555 S.W.3d 518, __, 2018 Tex. LEXIS 615, at *16 (Tex. 2018) (construing a statute, courts "thus presume the Legislature selected statutory words, phrases, and expressions deliberately and purposefully and was just as careful in selecting the words, phrases, and expressions that were included or omitted") (citing *Wasson Interests, Ltd. v. City of Jacksonville,* 489 S.W.3d 427, 438 (Tex. 2016)).

---

[9] *See, e.g., Tesson*, 413 S.W.3d at 523 (previous convictions of sexually violent crimes).

[10] § 841.001.

Considering, and rejecting, a statutory-intent argument like that Smith raises here, the Ninth Court of Appeals held the definition of repeat sexually violent offender contained in section 841.003(b) is not ambiguous, and "does not indicate that the offenses must have occurred in a certain sequence, or that they must have occurred on different days."[11] *In re Commitment of Hall,* No. 09-09-00387-CV, 2010 Tex. App. LEXIS 8096, at *6 (Tex. App.—Beaumont Oct. 7, 2010, no pet.) (mem. op.). The Ninth Court applied the statute as written. We will do the same. As noted, Smith concedes that his convictions meet the statutory requirements of conviction for more than one sexually violent offense and imposition of a sentence for at least one of the offenses. The evidence he is a repeat sexually violent offender is thus legally and factually sufficient. Smith's issues one and two are overruled.

Issues Three and Four – Smith's Difficulties Controlling His Behavior

In his third and fourth issues, Smith argues the evidence is legally and factually insufficient to support a finding that he has "serious difficulty controlling his behavior."

The phrase "serious difficulty in controlling behavior" comes from the 2002 opinion of the United States Supreme Court in *Kansas v. Crane.* 534 U.S. 407, 413 (2002). Several Texas courts of appeals have addressed the issue whether commitment proceedings under the Texas statute must require a separate factfinding that the offender

---

[11] Like Smith, the offender in *Hall* argued the statutory phrase "repeat sexually violent offender" does not mean "one who committed the same offense twice in the same criminal episode with the same person on the same day." *Hall*, 2018 Tex. App. LEXIS 8096, at *4. Smith argues the Ninth Court's opinion is inapposite because Hall challenged the trial court's jurisdiction by contending the "repeat sexually violent offender" requirement is jurisdictional. *Id.* at *2. That distinction does not diminish the persuasiveness of the Ninth Court's conclusion that section 841.003(b) means what it says.

has serious difficulty controlling his behavior. In 2003, the Ninth Court of Appeals considered a case in which the trial court refused the offender's requested instruction on the issue of volitional control of behavior and instead submitted to the jury the broad-form question: "Do you find that Daniel Almaguer suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?"[12] The Ninth Court concluded the separate instruction was not required in that case because the broad-form question, supported by instructions incorporating the Act's definitions of "behavior abnormality" and "predatory act,"[13] "encompassed a lack-of-control determination." *Almaguer,* 117 S.W.3d at 505. By its affirmative answer to the broad-form question, the court held, the jury "implicitly determined Almaguer's behavioral abnormality results in serious difficulty with control: he has an emotional or volitional defect so grave as to cause behavior that makes him a menace." *Id.* (citations omitted).

In reaching its conclusion in *Almaguer*, the Ninth Court relied in part on an opinion of the Third Court of Appeals issued the previous month, *In re Commitment of Browning,* 113 S.W.3d 851 (Tex. App.—Austin 2003, pet. denied). There, the offender Browning, also citing *Kansas v. Crane*, contended the trial court erred in his commitment hearing by refusing to submit a separate question asking the jury to find whether he had serious difficulty controlling his behavior. *Id.* at 862.[14] The court concluded that while *Crane* "undoubtedly requires a lack-of-control determination to be made by the jury," it does "not

---

[12] Almaguer requested an instruction telling the jury, "There must be proof of serious difficulty in controlling behavior."

[13] The definition of "predatory act" has since been amended. § 841.002(5).

[14] The trial court had submitted a broad-form question like that submitted in *Almaguer,* along with instructions incorporating statutory definitions. 113 S.W.3d at 862.

require that determination to be made in a specific, independent finding." *Id.* at 863. *See also In re Det. of Thorell,* 149 Wash. 2d 724, 735-36, 72 P.3d 708, 715-18 (Wash. 2003) (discussing *Crane* and reaching similar conclusion under Washington statute).

Other courts have agreed a separate jury instruction on "serious difficulty controlling behavior" is not required in a civil commitment case because "a lack-of-control determination is implicit in a jury's finding of a 'behavioral abnormality'." *In re Commitment of White,* No. 14-17-00115-CV, 2018 Tex. App. LEXIS 188, at *23 (Tex. App.—Houston [14th Dist.] Jan. 9, 2018, no pet.) (mem. op.); *accord*, *In re Williams*, 539 S.W.3d 429, 446 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (trial court did not abuse discretion by refusing to submit requested instruction concerning serious difficulty controlling behavior); *In re Stuteville,* 463 S.W.3d 543, 554 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (reaching same conclusion). Thus, when called upon to review the sufficiency of evidence supporting the offender's difficulty controlling his behavior, the court in *White* reviewed the record to determine whether it was legally and factually sufficient to support the jury's finding that White suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. 2018 Tex. App. LEXIS 188, at *23; *see also In re Fuentes,* No. 09-12-00187-CV, 2013 Tex. App. LEXIS 1868, at *9-19 (Tex. App.—Beaumont Feb. 19, 2013, pet. denied) (mem. op.). Although Smith's appellate issue does not expressly challenge the sufficiency of evidence he suffers from a behavior abnormality of the type the commitment statute describes, we will briefly describe the evidence supporting that conclusion.

Smith, 60 years old by the time of his civil commitment trial, testified both at a deposition and at trial. At the time of trial, he was imprisoned for the offenses of which

he was convicted in 1993. He testified he could not remember the first time he was sexually aroused by a child but said it was a "long time ago" and that while being arrested did not make his interests in children go away, he did stop acting on those interests.

The court heard expert testimony only from the State, which presented the testimony of Dr. Michael Arambula, a medical doctor board certified in general psychiatry and forensic psychiatry. Arambula said he had performed over 100 behavioral-abnormality evaluations over the last 12 to 13 years.[15] Arambula performed a forensic evaluation of Smith consisting of a review of records and a personal interview with Smith. The records Arambula reviewed included those from a sex offender treatment provider, Philip Kroko, who led Smith in a nine-month inpatient sex offender treatment program within the Department of Criminal Justice. Arambula also spoke with Kroko. The doctor expressed the opinion that Smith suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Arambula testified that Smith described his offense. The child victim was a boy between the ages of ten and fourteen. Smith was in his thirties at that time and was the boy's football coach. He "groomed" the child by buying presents for him and then negotiating for sexual activity in exchange for the gifts. Arambula testified Smith told him he began by fondling the boy, but then moved to watching pornographic videos with him, engaging in mutual masturbation, oral sex, and digital penetration of the boy's anus.

---

[15] Smith does not challenge Arambula's qualifications. *See In re Bohannan,* 388 S.W.3d at 305 (addressing expertise required of expert witness in civil commitment proceeding).

During his deposition, Smith admitted he had similar sexual contacts with another boy but was not prosecuted for those acts. Smith invoked his Fifth Amendment rights at trial when asked about this second victim. Arambula reviewed records that included an outcry statement from the second victim and Smith's confessions of sexual offenses against both victims.

Arambula also testified the records he reviewed contained pictures of the boys. During his criminal trial, Smith admitted he had a photo album containing nude pictures of both child victims. When Smith was arrested for his offenses against the first victim, the second was at Smith's home and both the boy and Smith were naked. The record shows Smith's sexual conduct with the boys occurred over a three-to-four-year period and included many individual sexual acts.

Arambula diagnosed Smith as suffering from pedophilia, a form of sexual deviance. He described Smith's illness as both severe and chronic, noting it had "been there for many years." During his testimony, Smith also identified himself as a pedophile. Arambula said Smith's age does not affect his opinion of the risk of Smith's recidivism because, according to Kroko, Smith "struggles with fixed fantasies and he's had them a long time and he's still trying to hide them."

Along with Smith's severe form of pedophilia, Arambula cited as factors indicating an elevated risk of recidivism the long period of time Smith maintained a sexual relationship with his victims; the large number of sexual acts involved; the level of

grooming involved[16] and Smith's selection of victims who had difficulties in their homes; the male gender of Smith's victims;[17] and his response to the treatment provided him.

The record shows Smith completed the nine-month program in prison under Kroko's treatment. Arambula said such a program was "short," compared with the "very long time" Smith has had his illness. He said nine months is the "beginning of a . . . longer investment in treatment," and said Kroko agreed.[18] Also of significance to Arambula was Smith's inability, during his testimony, to report aspects of his offense cycle that Kroko said they had "covered" in treatment. Arambula concluded Smith "responded some to treatment" but that response was not adequate, in Arambula's opinion, to permit Smith to be free in the community. Arambula testified Kroko reached a similar conclusion, noting that while Smith's response to treatment was generally positive, Kroko had concerns about Smith's readiness to "be out" in the community. Even Smith testified he did not believe there is a "cure" for sexual attraction to children. Asked whether he believed the nine-month program he had completed "outweighs 30 years of having sexual fantasies about male children," Smith responded, "it's an ongoing process."

Addressing risk factors that he did not find in Smith, Arambula testified Smith does not have "much antisocial behavior other than the repetition of sexual acts with kids.

---

[16] In addition to the evidence that Smith groomed the children, there was evidence Smith sometimes manipulated contact with their mothers to gain access to the children.

[17] Arambula testified that "research shows that when the victims are boys; i.e., the perpetrator is picking boys, that it's a more serious condition and the risk for recidivism is higher than compared to victims who are young girls, for example."

[18] Arambula testified, "[t]reatment is essentially a lifelong process for people who have pedophilia that's chronic." They "have to be in treatment pretty much the rest of their life in order to understand and keep managing their illness."

Aside from that, he's been a law-abiding citizen." And, the record shows Smith avoided trouble while in prison, did not have a history of drug or alcohol abuse, and was not generally violent. Smith told the jury his treatment had given him the tools to cope with his sexual urges and to keep from acting on them. Viewed in the light most favorable to its finding, however, and particularly considering Arambula's strong testimony and Kroko's concurrence in his treatment opinions, we find the evidence permitted the jury rationally to conclude beyond reasonable doubt that Smith suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. This finding encompasses the implicit conclusion that appellant has serious difficultly controlling his behavior. We find the evidence also sufficient to support the jury's implicit conclusion. *See, e.g., In re Perez,* No. 09-12-00132-CV, 2013 Tex. App. LEXIS 1866, at *11-12 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.) (finding the jury was entitled to infer current serious difficulty controlling behavior based on the offender's past behavior, his testimony and the experts' testimony).

We overrule Smith's third and fourth issues.

Issue Five – Fundamental Error Doctrine

By his fifth issue, Smith contends the trial court committed fundamental error by determining him to be a repeat sexually violent offender. He refers to the statement in *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572 (Tex. 2006), in which the court stated that fundamental error may include "instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State . . . ." *Id.* at 577. Smith reiterates his argument under his first and second issues that the Legislature's findings stated in section 841.001 should exclude from the

statute's application offenders who have received multiple convictions arising from the same criminal episode. He argues also that the statute's application to him brings into play Justice Kennedy's concurring opinion in *Crane,* in which he expressed the opinion that the Supreme Court's case law would not justify civil commitment if it becomes "a mechanism for retribution or general deterrence" rather than for *bona fide* treatment. 521 U.S. at 373 (Kennedy, J., concurring).

The State argues the doctrine of fundamental error is inapplicable to this case. In our disposition of his first and second issues, we have addressed Smith's argument he should not be regarded as a repeat sexually violent offender. We concluded that under the undisputed evidence and the statute's plain language, he meets its definition of such a repeat offender. Assuming, without deciding, that the concept of fundamental error could have application, our disposition of those issues requires the conclusion the court committed no error, fundamental or otherwise, by finding Smith is a repeat sexually violent offender. We resolve Smith's fifth issue against him.

Conclusion

Having overruled each of Smith's issues, we affirm the judgment of the trial court.


James T. Campbell
Justice