

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00184-CV

## IN THE COMMITMENT OF GUILLERMO CHICO REGALADO

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 74,727A, Honorable Dan L. Schaap, Presiding

March 3, 2020

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Guillermo Chico Regalado appeals his civil commitment as a sexually violent predator under § 841.001 *et seq.* of the Texas Health and Safety Code. His three issues concern 1) the factual sufficiency of the evidence underlying the jury's verdict, 2) the trial court's decision to permit the State's expert to "disclose the underlying facts or data of Regalado's unadjudicated sexual and nonsexual offenses," and 3) the court's decision permitting the State to question Regalado about "uncharged sexual and nonsexual offenses." We affirm.

*Issue One – Factual Sufficiency of Verdict*

Appellant initially contends that, upon an "exacting analysis of the various aggravating and mitigating factors variously relied upon by the State's expert witness in formulating his opinion that [appellant] suffers from a behavioral abnormality that puts him at a risk for sexually-violent recidivism," we should conclude that the "jury's verdict is against the great weight and preponderance of evidence so as to be clearly wrong or manifestly unjust." We overrule the issue.

The standard of review we apply is that stated in *In re Commitment of Smith*, 562 S.W.3d 800 (Tex. App.—Amarillo 2018, no pet.). It provides that, when conducting a factual sufficiency review in a sexually violent predator commitment proceeding, we weigh all the evidence to determine if a verdict supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial. *Id.* at 804.

As for the prerequisites of a civil commitment, a trial judge shall commit the person for treatment and supervision if the fact-finder determines he or she is a sexually violent predator. *See id.* at 803. Statute defines a sexually violent predator as "a repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(1)–(2) (West 2017). In turn, a "person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id.* § 841.003(b). Finally, establishing that a person is a sexually violent predator requires proof beyond reasonable doubt. *In re Commitment of Smith*, 562 S.W.3d at 803. With that said, we turn to the evidentiary record before us.

In August of 1992, the State convicted appellant of aggravated sexual assault. The underlying offense was committed almost three years earlier in October of 1989. It consisted of his breaking into the home of a 33-year-old female whom he did not know, hiding in her bedroom closet, being discovered by the female, forcing her onto the bed, and engaging in "rape sex." This occurred shortly after his being stopped on the street by a policeman and questioned about a different burglary. Though appellant had not committed the latter, he testified to having committed several others before the evening he committed the October 1989 rape. For assaulting this female in 1989, appellant received a 50-year sentence.

Also in August of 1992, the State convicted appellant of a distinct sexual assault under § 22.011 of the Texas Penal Code in 1992. He committed this offense in May of 1990. It involved his climbing through a window, encountering a female, placing a "pillow over her eyes," and raping her.

A month later in June of 1990, he committed the offense of aggravated robbery, resulting in his conviction for same in May of 1992. This offense began as one of several other burglaries committed within weeks of the May 1990 sexual assault. After throwing a beer at two women at a phone booth, appellant came upon an apartment, entered it, hid in a closet, kicked the male who eventually discovered him, and directed the male to lay on the ground. Knowing that a female was in an adjoining room, he directed the woman to enter and lay on her stomach next to the male. She complied. Appellant then placed a handgun against her head, threatened to kill her if she looked at him, moved the handgun to her vagina, and inserted the gun into it. Though unclear as to whether he did so before or after sexually assaulting the female with the weapon, appellant also shot the

3

male once in the face and once in the shoulder. Police officers arrested him later that night after his having been discovered breaking into a vacant house. This conviction resulted in a 60-year prison term, which he was serving at the time of the trial at bar.

Other evidence revealed that many of the foregoing crimes had a relationship to drugs or their use by appellant. Appellant attempted to explain several by saying that he was under the influence of cocaine or alcohol at the time.

Appellant also testified that, since being in prison, he had not sexually assaulted another female. Nevertheless, prison officials issued him approximately 50 disciplinary citations since his incarceration. So too had he twice violated prison rules by masturbating toward a female prison guard; this was done as recently as 2015.

Appellant admitted to being a recovering addict. He also testified to being a "rehabilitated person," apparently due to his participation in a program. His participation began within months before trial began in this cause. He believed that it would keep him from reoffending because he learned how to place himself in the shoes of his victims. "I've learned today how to – to know God. I've learned today how to respond to my urges and know who I am today," he also told the fact-finder. Yet, other evidence indicated his having practiced religion before committing the crimes for which he was imprisoned. And, when asked about what he learned during the program, his answers could be viewed as vague. For instance, in reference to learning of his sexual "triggers" and what triggered him to engage in the aforementioned acts of masturbation, he said "[b]y not putting myself in their shoes."

Other evidence appeared of record. It included a recent exchange with a victim impact panel wherein he asked when he could "stop having empathy for [his] victims."

4

That he would always need "sex offender treatment" was heard by the jury, as was his belief that he would not reoffend. Yet, appellant also suggested that he could not be sure about reoffending because he had yet to be released from prison and placed "out there in the world." So, "you can never say that you are not."

Eventually, the State's expert testified. His testimony included the opinions that appellant 1) had minimally progressed as a result of his sex offender treatment, 2) is in the "highest risk category of all the . . . sex offenders" to reoffend, 3) is a sexual sadist, and 4) "suffers from [a] behavioral abnormality making him likely to engage in a predatory act of sexual violence."[1] The latter opinion was founded upon appellant's "sexual deviancy" and "antisocial orientation"; together, they served as risk factors enhancing the likelihood of his reoffending. These opinions were founded upon appellant's criminal history, sexual offenses, and how his offenses progressively became more violent. So too did the expert testify that "what somebody is aroused to when they are 17 or 18, they're probably still aroused to when they are 46 or 47 . . . whether that be a child or whether that would be arousal to violent sex." "So that's why I think he still has that today," concluded the expert.

Contrary to appellant's suggestion, the likelihood of reoffending need not be quantified to a certain percentage. *See In re Commitment of Manuel*, No. 01-18-00650-CV, 2019 Tex. App. LEXIS 4924, at *12 (Tex. App.—Houston [1st Dist.] June 13, 2019, no pet.) (mem. op.) (stating that "there is no numeric value or label that can be used to determine whether an offender is 'likely' to reoffend"); *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 Tex. App. LEXIS 1357, at *25–26 (Tex. App.—Dallas Feb. 20,

---

[1] One test utilized by the expert at bar indicated a 20% risk of reoffending, which he apparently construed to be the highest risk for reoffending under the test.

2018, no pet.) (mem. op.) (stating that "use of the term 'likely' in the Act does not require evidence of a specific percentage of risk, and the term should not be interpreted to mean 'more likely than not'"); *In re Commitment of Riojas*, No. 04-17-00082-CV, 2017 Tex. App. LEXIS 10244, at *13–14 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.) (stating the same); *In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 Tex. App. LEXIS 4750, at *5–6 (Tex. App.—Beaumont May 1, 2014, pet. denied) (mem. op.) (stating that "this Court has rejected the notion that the term 'likely' has a precise definition of the type associated with any certain assigned percentage of risk"); *see also In re Commitment of Terry,* No. 09-15-00500-CV, 2016 Tex. App. LEXIS 13330, at *36–37 (Tex. App.—Beaumont Dec. 15, 2016, no pet.) (mem. op.) (stating that an expert's "working definition of 'likely' being defined as 'more than a mere possibility' does not render evidence in an SVP civil commitment case legally or factually insufficient"). Statute requires only proof that the individual is "likely to engage in a predatory act" due to a behavioral abnormality. The record contains such evidence and evidence of appellant's committing and being convicted for multiple sexually violent offenses. More importantly, the jury need not believe appellant's testimony about being a changed person unlikely to reoffend. It was free to deem credible the witnesses and testimony it chose. *See In re Commitment of Brown*, 2018 Tex. App. LEXIS 1357, at *24.

The jury's verdict has the support of legally sufficient evidence. And, upon weighing all the evidence of record, we cannot say that the verdict reflects a risk of injustice that would compel ordering a new trial. In short, it also has the support of factually sufficient evidence.

*Issue Two – Relevance of Expert Testimony*

6

Through his second issue, appellant contends the "[e]vidence that State's psychological expert . . . did not consider and rely upon as a basis for his opinion could not have been probative or relevant in helping the jury evaluate his opinion and, therefore, should not have been admitted as 'basis' evidence under Texas Rule of Evidence 705." We overrule the issue.

An expert's opinion is inadmissible if the underlying facts and data do not provide a sufficient basis to support it. TEX. R. EVID. 705(c). Additionally, the facts and data underlying the opinion need not be admissible themselves for the opinion to be admissible; this is true as long as experts in the particular field would reasonably rely on those kinds of otherwise inadmissible facts or data in forming an opinion. TEX. R. EVID. 703. Yet, not only may an expert disclose the underlying facts or data upon which he based his opinion, *In re Commitment of Hull*, No. 13-17-00378-CV, 2019 Tex. App. LEXIS 6118, at *24 (Tex. App.—Corpus Christi July 18, 2019, pet. filed) (mem. op.); *In re Talley*, 522 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2017, no pet.), but also do so if the underlying facts and data would not be independently admissible. In other words, if the underlying facts or data would otherwise be inadmissible, they may not be disclosed if their probative value is outweighed by their prejudicial effect. *See* TEX. R. EVID. 705(d). Their prejudicial effect, though, would not matter if the evidence were inadmissible to begin with. So, logically, facts or data otherwise inadmissible are actually admissible if the Rule 705(d) test is met and they are of the type that experts in the field would reasonably rely upon in forming an opinion. *See In re Commitment of Hull*, 2019 Tex. App. LEXIS 6118, at *24 (stating that "when an expert relies upon hearsay in forming his

7

opinion, and that hearsay evidence is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it"). That is what the trial court had before it here.

The "facts and data of unadjudicated sexual and nonsexual offenses [committed by appellant] in which the State's expert admitted he did not rely upon that evidence when he formulated his opinion" is the evidence in dispute. Because the expert did not rely on it, it was "not probative" or irrelevant, according to appellant. Thus, it should have been excluded, he continued. We disagree.

Here, the expert testified that both sexual and nonsexual offenses were relevant to assessing appellant's sexual deviancy, antisocial orientation, personality disorder, and behavioral abnormality. Those offenses were known to the expert when initially developing his opinions. The underlying facts of each offense, though, may not have been known at the time. They later became known to him, however, and his opinions remained the same.

The expert also opined about the importance of knowing the facts underlying the offenses. When asked "did you – in reviewing *all of those* [offenses], did you also take into consideration the facts and details," he replied affirmatively. (Emphasis added). When asked why he did, he explained that "[t]he only way to really diagnose that [appellant's deviance] and to know that is to know the details of – really everything that he has done."

So, during the preliminary hearing at which appellant's objection was addressed, the trial court had before it evidence of 1) an expert opinion, 2) the expert's reliance on offenses committed by appellant and the facts underlying those offenses, and 3) why the offenses and facts underlying them were relevant to developing the opinion ultimately

8

voiced to the jury. This provided the trial court with the evidentiary foundation upon which to conclude that the underlying facts of **all** the offenses considered by the jury were relevant and, therefore, subject to disclosure under Rule 705(d), *In re Commitment of Hull*, and *In re Commitment of Talley*.[2] That the disclosure included facts unknown to the expert when developing his initial opinion matters not. He knew of and had considered them by the time he informed the jury of his opinion.

The true question here is not the admissibility of what was kept from the jurors' ears but, rather, the admissibility of what they were allowed to hear. According to Rule of Evidence 703, an expert "may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." TEX. R. EVID. 703. That language says nothing of a deadline by which the expert must discover facts which will be used as a basis for his opinion. In fact, an expert opinion may be founded on information perceived during trial. *See LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating that an expert must base his opinion on facts or data perceived or reviewed during or before trial). Nor does Rule 703 say anything of a deadline tied to the date on which the expert initially developed an opinion and requiring the expert to ignore information obtained later. Indeed, we doubt appellant would be arguing that the expert was barred from considering facts discovered after the development of an initial opinion if those facts caused the expert to change his opinion in favor of appellant. Yet, that is the unintentional effect of what appellant argues: once the expert derives an original opinion, he may not consider anything else which may

---

[2] We do not forget that Rule 705(d) requires balancing relevance against prejudice. Yet, appellant did not complain here that the prejudicial effect of the evidence outweighed its probative value. He merely focused on the relevance of the evidence.

9

support or negate it. Until Rule 703 is rewritten by its original scriveners to incorporate blinders which stop the expert from seeing additional matter, we read it as permitting the continued consideration of other facts and data after development of an original opinion. And, to the extent that the additional data formed the basis of the opinion told at trial it may also be revealed to the fact-finder, if the balancing test within Rule 705(d) is otherwise met. Consequently, the trial court did not abuse its discretion by rejecting appellant's contention that facts discovered after the expert derived his initial opinion were irrelevant.

*Issue Three – Evidence of Uncharged Crimes*

Appellant finally contends that the trial court erred in allowing the State to question him about unadjudicated criminal offenses he committed. Allegedly, this is so because that evidence was irrelevant until the expert made it relevant by offering his opinion. Until then, appellant could not be asked about them. We overrule the issue.

As previously mentioned, the civil commitment of a sexually violent predator depends upon illustrating that the individual is a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. It is quite reasonable to conclude that whether a person suffers from a behavioral abnormality rendering him likely to reoffend is a topic outside the ken of the average juror. Thus, an expert's testimony on those matters would tend to assist the trier of fact. *See Tyson Fresh Meats, Inc. v. Abdi*, No. 07-12-00546-CV, 2014 Tex. App. LEXIS 5693, at *15 (Tex. App.—Amarillo May 28, 2014, pet. denied) (mem. op.) (stating that expert testimony assists the fact-finder when the expert's knowledge is beyond that of the average juror).

It is also beyond dispute that an expert's opinion must not be conclusory to be admissible. It is conclusory when the witness simply proffers a conclusion without explanation or factual substantiation. *Bustamante ex rel. D.B. v. Ponte*, 529 S.W.3d 447, 462 (Tex. 2017). As explained here by the expert during a pretrial hearing, both a person's adjudicated and unadjudicated criminal history and the facts underlying those offenses are pertinent to determining the existence of a behavioral abnormality and the likelihood of reoffending. To that we add what was said in *LMC Complete Auto*: an expert may base his opinion on facts and data perceived and reviewed before and during trial. *LMC Complete Auto., Inc.*, 229 S.W.3d at 478. So, appellant's testimony about his criminal history was relevant, as that term is defined in the Rules of Evidence. *See* TEX. R. EVID. 401(a)–(b) (stating that relevant evidence is that which has a tendency to make a fact more or less probable than it would be without the evidence when the fact is of consequence). And, if perceived by the expert during trial, that expert could consider it when developing his opinion about the ultimate issues at bar.

As for appellant's reference to Rule 705 and its allusion to the expert revealing the facts underlying his opinion, the rule certainly permits it. Yet, the rule does not specify that only the expert may disclose facts or data relevant to his opinion. Indeed, reading such a restriction into 705 would vitiate the long-standing rule espoused in *LMC Complete Auto* and leave all wondering how an expert's opinion may be based on data heard at trial if he must testify about that data before hearing it.

In short, viewing appellant's testimony as relevant comports with guiding rules and principles. There may have been other grounds of objection available to appellant, but he did not raise them on appeal. Given this, we cannot say that the trial court abused its

discretion in permitting the State to question appellant about his unadjudicated criminal history before the expert testified. *See Brinker v. Evans*, 370 S.W.3d 416, 421 (Tex. App.—Amarillo 2012, pet. denied) (stating that an evidentiary ruling that comports with guiding rules and principles will not be disturbed under the standard of abused discretion).

We affirm the trial court's order of commitment.


Brian Quinn
Chief Justice