**AFFIRMED and Opinion Filed June 9, 2022**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00604-CV**

**IN RE: THE COMMITMENT OF CEDRIC OLIVER WEST**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CV1970006**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Carlyle

Cedric West appeals the trial court's judgment, following a jury verdict, declaring him a "sexually violent predator" (SVP) subject to civil commitment. *See* TEX. HEALTH & SAFETY CODE §§ 841.003, .081. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

THE EVIDENCE SUFFICIENTLY SUPPORTS THE FINDING THAT MR. WEST IS A REPEAT SEXUALLY VIOLENT OFFENDER

Mr. West argues the evidence is legally insufficient to satisfy the first element in a SVP case—that he is a "repeat sexually violent offender," *see* TEX. HEALTH & SAFETY CODE § 841.003(a)—because his two convictions occurred on the same day. This argument is not a sufficiency argument but a statutory construction argument,

which we review de novo. *See In re Commitment of Hall*, No. 09-09-00387-CV, 2010 WL 3910365, at *1 (Tex. App.—Beaumont Oct. 7, 2010, no pet.) (mem. op.). "A person is a repeat sexually violent offender . . . if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." TEX. HEALTH & SAFETY CODE §§ 841.002(9), .003(b). It is undisputed that Mr. West was convicted and sentenced for two sexually violent offenses, one of which occurred in 2011 and the other in 2013. *See* TEX. HEALTH & SAFETY CODE § 841.002(8); TEX. PENAL CODE §§ 22.011, .021. By the statutory definition, he is a "repeat sexually violent offender," and the trial court properly granted a directed verdict for the State on the issue. *See id.*

Mr. West argues the statutory definition does not accurately reflect the legislature's intent to include only those recidivists who persist in reoffending after receiving punishment for a prior conviction. Accepting his argument would mean adding an element to the statutory definition—that the offender's second conviction must stem from an offense that occurred after the first conviction and sentence. Our sister courts have repeatedly rejected this argument,[1] and we join them. The evidence sufficiently supports the finding that Mr. West is a "repeat sexually violent offender."

---

[1] *See In re Commitment of Tow*, No. 02-21-00209-CV, 2022 WL 557423, at *2 (Tex. App.—Fort Worth Feb. 24, 2022, no pet.) (mem. op.); *In re Commitment of Thompson*, No. 06-20-00024-CV, 2020 WL 6066205, at *3 (Tex. App.—Texarkana Oct. 15, 2020, pet. denied) (mem. op.); *In re Commitment of Eddings*, No. 02-19-00290-CV, 2020 WL 3730738, at *14 (Tex. App.—Fort Worth July 2, 2020, pet. denied) (mem. op.); *In re Commitment of Smith*, 562 S.W.3d 800, 804 (Tex. App.—Amarillo Nov. 7, 2018,

Mr. West next argues the evidence is legally and factually insufficient to support the jury's conclusion on the second element required in SVP cases—that he "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE §§ 841.003(a), .062(a). Our standard of review in civil commitment cases reflects the elevated burden of proof at trial. *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020). In either a legal or factual sufficiency review, we review the evidence to determine whether it would allow a reasonable factfinder to determine beyond a reasonable doubt that the statutory elements were met. *See id.* at 674–75. "The distinction between the two types of review 'lies in the extent to which disputed evidence contrary to a finding may be considered.'" *Id.* at 674 (quoting *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018)).

In a legal sufficiency review, we view the evidence in the light most favorable to the finding, assuming that the factfinder resolved all disputed facts in favor of the finding if a reasonable factfinder could, and disregarding all evidence a reasonable factfinder could have disbelieved or found to be incredible. *Id.* In a factual sufficiency review, we do not disregard disputed evidence that the factfinder could

---

no pet.); *In re Commitment of Hall*, No. 09-09-00387-CV, 2010 WL 3910365, at *1 (Tex. App.—Beaumont Oct. 7, 2010, no pet.) (mem. op.).

not have credited in favor of the finding. *Id.* Instead, we consider whether, in light of the entire record, the disputed evidence and undisputed facts that do not support the finding are so significant that the factfinder could not have found the statutory elements beyond a reasonable doubt. *Id.* at 674–75.

At trial, the State relied on expert testimony from Dr. Darrel Turner to prove Mr. West "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE §§ 841.003(a), .062(a). Dr. Turner opined that Mr. West suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Turner testified about the different circumstances under which he evaluates potential SVPs. Sometimes he evaluates them at the request of the State's multidisciplinary team (MDT)—a group who reviews files of sex offenders nearing release to determine whether they merit further evaluation as potential SVPs subject to civil commitment. *See id.* § 841.022(c). Other times, he performs evaluations for petitioners or respondents in civil commitment proceedings. In those instances, he is not the first expert to evaluate the offender, as the expert engaged at the MDT's request will have already determined the offender suffers from a behavioral abnormality. Dr. Turner testified that, in such cases, he agrees with the MDT evaluator's conclusion most of the time.

Here, the State retained Dr. Turner to evaluate Mr. West in connection with the civil commitment proceedings underlying this appeal. Dr. Turner testified that he interviewed Mr. West and reviewed records related to Mr. West's offenses, victim statements, witness statements, court records, prison records, and mental health records. In addition, Dr. Turner said he reviewed and relied upon the MDT evaluation report authored by Dr. Charles Woodrick.

Dr. Turner discussed the risk factors suggesting an offender has a behavioral abnormality, with the more powerful factors being anti-social behavior, sexually deviant interests, and multiple sex offenses, especially if the offender has been punished for one of those offenses before acting out again in a sexually violent manner. According to Dr. Turner, all three factors suggest Mr. West has a behavioral abnormality that makes him likely to reoffend.

Dr. Turner explained that, according to research, if a person has both anti-sociality and sexually deviant interests, that person's risk of reoffending is especially high, because of the way the conditions interact: "[T]hey have this sexually deviant urge that requires victimizing someone to satisfy and because they're so anti-social they're okay with victimizing other people." Both anti-sociality and sexual deviance are lifelong conditions that cannot be cured.

Dr. Turner testified that Mr. West has demonstrated both anti-social behaviors and sexually deviant interests. With respect to anti-sociality, Dr. Turner gave Mr.

West a "rule out diagnosis of anti-social personality disorder." He explained that the "rule out" qualifier—indicating insufficient information to make a definitive diagnosis—did not mean much in this case, because Mr. West "clearly suffers from the primary criteria of that disorder." But, because he did not have evidence of Mr. West's condition prior to age fifteen, he thought the more conservative approach was to give a "rule out" diagnosis. Dr. Turner cited Mr. West's constant rule-breaking, "victimizing other people," "lack of remorse," "lying," "problem with authority," sexual and non-sexual offenses, and substance-abuse history as evidence of his anti-sociality.

With respect to sexual deviance, Dr. Turner diagnosed Mr. West with unspecified paraphilic disorder with sadistic features. That means Mr. West has a sexually deviant interest which may include a sexual attraction to causing pain in a sexual partner or victim. Dr. Turner noted that the violent nature of Mr. West's sexual offenses, one against his eleven-year-old daughter and another against a female acquaintance, was indicative of his sexual deviance. And the fact that he committed the first assault while others were present in the house indicated an inability to control his impulses. Dr. Turner also found it extremely significant that Mr. West committed the second sexual offense while he was out on bond for the first sexual offense. This showed a high level of anti-sociality and sexual deviance, suggesting Mr. West could not control his behavior.

Other risk factors for re-offense included that: (1) Mr. West's offenses occurred relatively recently; (2) Mr. West expanded his victim pool from a young girl within his family to an adult woman outside of his family; (3) Mr. West acknowledged being intoxicated at the time of his offenses; and (4) Mr. West had committed other violent crimes.

With respect to additional diagnoses, Dr. Turner testified that Mr. West suffers from: "rule out" borderline intellectual functioning, severe PCP use disorder in full remission, and schizophrenia. Although Mr. West's intellectual functioning did not affect his risk assessment, the other two diagnoses suggested a danger of reoffending.

Dr. Turner explained that "an offender who is under the influence of a substance when they commit the sexual offenses is at an increased risk to reoffend." Mr. West acknowledged he was intoxicated during both of his offenses, although he denied committing them, and there was no indication that Mr. West intended to seek treatment for his substance-abuse issues. Given Mr. West's "schizophrenia and tendency to self-medicate," Dr. Turner was concerned that Mr. West could go back to using PCP.

As for the schizophrenia, Dr. Turner testified that it is a very severe disorder that is extremely disruptive to an individual's life. Although it was not Mr. West's fault he suffers from schizophrenia, research shows that "people with more severe mental disorders who are sex offenders are at an increased risk of reoffending." And

based on a review of Mr. West's records, it appeared Mr. West decompensated to a psychotic state rapidly when off his medication, and Mr. West had a history of medication non-compliance. Indeed, records showed Mr. West was only forty-three percent compliant with taking his medication while in prison, and there was evidence he refused treatment.

Dr. Turner did not score Mr. West on the PCL-R test—a test that measures the degree to which an individual suffers from psychopathy—because Mr. West has schizophrenia. Many of the factors on the PCL-R test overlap with schizophrenia, making it difficult to differentiate the extent to which the person is psychopathic. Thus, although the PCL-R is typically used when evaluating for a behavioral abnormality, Dr. Turner did not think it was appropriate in this case.

On the Static 99-R test, which measures the overall risk of sexual reoffending, Dr. Turner scored Mr. West a four. He explained that, based on that score, Mr. West is twice as likely to be re-convicted for another sex offense as the average sex offender.

According to Dr. Turner, there were not many "protective factors"—factors suggesting a lower likelihood of reoffending—weighing in Mr. West's favor. In fact, Dr. Turner identified only two: (1) that Mr. West had been in trouble only twice while incarcerated; and (2) Mr. West had not been caught using drugs while incarcerated. Although Dr. Turner took those protective factors into account, he testified they did

not alter his assessment because "there are so many risk factors and the behavioral abnormality is so clear."

The only other witness at the trial was Mr. West. He denied committing the sexual offenses, although he admitted he has a drug problem. He said he was on his schizophrenia medication at the time of his arrest for each of the sexual offenses, and he denied ever missing his medication. He said that, to the extent prison records showed he did not take his medication, those records were incorrect.

Dr. Turner's expert opinion was that Mr. West suffers from a "behavioral abnormality"[2] that makes him likely to engage in a "predatory act"[3] of sexual violence. Mr. West argues the legislature intended the statute to apply only to "a small but extremely dangerous group of sexually violent predators" whose behavioral abnormalities are "not amenable to traditional mental illness treatment modalities." *See* TEX. HEALTH & SAFETY CODE § 841.001. He also argues that Dr. Turner's testimony did not definitively disprove schizophrenia as the primary driver for his behavioral issues. And according to Mr. West, schizophrenia is "imminently treatable with medications and psychosocial therapy."[4] Thus, he argues, there is

---

[2] A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

[3] A "predatory act" is one that is "directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

[4] Mr. West cites only to a medical website, without a request or explanation as to whether we can take judicial notice of any facts provided on that website.

reasonable doubt whether his behavioral abnormality is "amenable to traditional mental illness treatment modalities." *See id.* We reject Mr. West's argument.

Both this court and the supreme court have rejected the premise on which Mr. West's argument relies—that the State must prove the offender is part of the "small but extremely dangerous group" identified in the legislative findings. Citing our opinion in *In re Commitment of Johnson*, the supreme court has explained that the "'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's definition of 'sexually violent predator' and [is] not an element the jury [is] required to find." *In re Commitment of Stoddard*, 619 S.W.3d at 677 (citing *In re Commitment of Johnson*, No. 05-17-01171-CV, 2019 WL 364475, at *3 (Tex. App.—Dallas Jan. 30, 2019, no pet.)). Thus, the extent to which reasonable doubt may exist as to whether Mr. West's behavioral abnormality is "amenable to traditional mental illness treatment modalities" is irrelevant to whether the evidence sufficiently supports the jury's determination that he has such a behavioral abnormality.

Moreover, the jury could have concluded beyond a reasonable doubt that Mr. West's behavioral abnormality is not "amenable to traditional mental illness treatment modalities." There is no record evidence suggesting that traditional mental illness treatments would be effective in mitigating the danger posed by Mr. West. And Mr. West testified both that he was on his medication at the time of his arrest

for his sexually violent offenses and that he never misses his medication. In contrast, Dr. Turner testified that Mr. West has a history of refusing to take his medication. Regardless of which testimony the jury chose to credit, it could have determined beyond a reasonable doubt that treatment for Mr. West's schizophrenia was ineffective at preventing his risk of committing sexually violent offenses. The evidence is legally and factually sufficient to support the jury's conclusion that Mr. West has a behavioral abnormality.

THE TRIAL COURT DID NOT REVERSIBLY ERR BY ADMITTING TESTIMONY ABOUT THE MDT PROCESS

Finally, Mr. West argues the trial court reversibly erred by allowing Dr. Turner to testify about the MDT and its process for evaluating potential SVPs. We review the trial court's evidentiary rulings for abuse of discretion and will not reverse based on an erroneous ruling unless the error likely led to an improper judgment. *In re Commitment of Mendoza*, No. 2019 WL 5205710, at *9 (Tex. App.—Dallas Oct. 16, 2019, pet. denied) (mem. op.).

Mr. West contends Dr. Turner's testimony concerning the MDT process was irrelevant to the jury's ultimate determination of whether he is an SVP. Even if we assume without deciding that the evidence concerning the MDT process was irrelevant, the only potential harm identified by Mr. Woods is that the jury was able to learn that another expert, Dr. Woodrick, evaluated Mr. West and determined that

–11–

he suffers from a behavioral abnormality. Mr. West claims this improperly bolstered Dr. Turner's opinion testimony.

Just before Dr. Turner testified that he reviewed and relied on Dr. Woodrick's report from the MDT evaluation, the trial court instructed the jury that "certain hearsay information contained in records reviewed by an expert or experts will be admitted before you through expert testimony . . . only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted." The trial court likewise instructed the jury in the charge of the court.

Absent record evidence to the contrary, we presume the jury followed the trial court's limiting instructions. *In re Commitment of Mendoza*, 2019 WL 5205710, at *9. Here, there is no evidence the jury disregarded the trial court's instructions and inappropriately considered the MDT evaluation as substantive evidence of Mr. West's behavioral abnormality. And in similar circumstances, we have held that any error in allowing the jury to learn about the MDT evaluator's opinion was harmless. *See, e.g.*, *In re Commitment of Green*, No. 05-20-00016-CV, 2021 WL 2948584, at *2 (Tex. App.—Dallas June 28, 2021, no pet.) (mem. op.); *In re Commitment of Mendoza*, 2019 WL 5205710, at *9. Mr. West has not demonstrated that Dr. Turner's testimony resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a).

We affirm the trial court's judgment.

200604f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: THE COMMITMENT OF
CEDRIC OLIVER WEST

No. 05-20-00604-CV

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. CV1970006.
Opinion delivered by Justice Carlyle.
Justices Reichek and Nowell
participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 9th day of June, 2022.