

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00139-CV

---

IN RE: THE COMMITMENT OF RICHARD REYES

---

On Appeal from the 421st District Court
Caldwell County, Texas
Trial Court No. 23-O-097, Honorable F.C. "Chris" Schneider, Presiding

---

July 31, 2024

MEMORANDUM OPINION[1]

Before QUINN, C. J., and PARKER and YARBROUGH, JJ.

A jury found appellant, Richard Reyes, to be a "sexually violent predator" under chapter 841 of the Health and Safety Code, the Texas Civil Commitment of Sexually Violent Predators Act. Pursuant to that finding, the trial court entered an Order of Commitment providing that following Reyes's release from imprisonment, he immediately be transported to a contracted Texas residential facility for sex offender treatment and supervision. By two issues, Reyes argues the evidence was legally and factually insufficient to support a finding beyond a reasonable doubt that he has a behavioral

---

[1] The Texas Supreme Court transferred this appeal from the Third Court of Appeals. Thus, we are bound by the latter's precedent should it conflict with ours. TEX. R. APP. P. 41.3.

abnormality that makes him likely to engage in a predatory act of sexual violence. We affirm.

### Background

In 2003, Reyes was convicted and sentenced for aggravated sexual assault of a child and attempted sexual assault of a child. He pleaded guilty to the offenses and is also serving a sentence for indecency with a child by exposure. Before his release from prison in May 2023, the State filed a petition in Caldwell County district court to civilly commit Reyes as a sexually violent predator under the Act, alleging he was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. A clinical psychologist, Dr. Christine Reed, and Reyes testified at the trial. The jury found he had such an abnormality and likelihood, and the trial court entered judgment manifesting that finding and ordering his civil commitment.

### Analysis

By his two issues, Reyes challenges the legal and factual sufficiency of the evidence supporting a finding that he has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. He claims that because Reed, the State's expert, found Reyes is not a sexual recidivist, the evidence supporting the jury's verdict is legally and factually insufficient. We overrule the issues.

The standard of review is set forth in *In re Commitment of Stoddard*, 619 S.W.3d 665, 674-75 (Tex. 2020) and *In re Commitment of Delacruz,* No. 03-19-00420-CV, 2020 Tex. App. LEXIS 10576, at *3-4 (Tex. App.—Austin Apr. 8, 2021, pet. denied) (mem. op.). We apply it here.

2

The Act provides for the involuntary "long-term supervision and treatment of sexually violent predators."  TEX. HEALTH & SAFETY CODE ANN. § 841.001.  Proving that a person is a sexually violent predator requires proof of two elements:  1) the person is a "repeat sexually violent offender" who 2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."  *Id.* at § 841.003(a). "Behavioral abnormality" means "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person."  *Id.* at § 841.002(2); *In re Commitment of Martin*, No. 03-23-00128-CV, 2023 Tex. App. LEXIS 6758, at *2-3 (Tex. App.—Austin Aug. 30, 2023, no pet.) (mem. op.).

We first note that sexual recidivism is not an element of the test.  Nowhere does the Act state that one must commit a sexual offense, be punished, released, and go out and commit another sexual offense.  Rather, the Act requires proof that the person is a "repeat sexually violent offender," meaning someone who has committed more than one sexually violent offense and sentenced for at least one.  *See In re the Commitment of Joiner*, No. 05-18-01001-CV, 2019 Tex. App. LEXIS 8032, at *3-4 (Tex. App.—Dallas Aug. 30, 2019, pet. denied) (mem. op.) (a person is a repeat sexually violent offender "if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses").  And, the evidence illustrated that Reyes met that component.  Because the statutory definition is not ambiguous, *In re Commitment of Smith*, 562 S.W.3d 800, 804 (Tex. App.—Amarillo 2018, no pet.), we forego interpreting it to include that which it does not say.  And, as for whether the evidence legally and

3

factually supported the finding that he had a behavioral abnormality that made him likely to engage in a predatory act of sexual violence, we conclude it does.

Reed, a clinical forensic psychologist, presented her expert testimony to the jury. She explained her education and experience as well as her evaluation of Reyes and his records. She then described her diagnoses of Reyes, discussed the offenses for which Reyes had been convicted and sentenced, and explained why she believed Reyes suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Her diagnosis of Reyes resulted in the opinion that he was a person with "Rule Out Pedophilic Disorder" due to his "intense urges, sexual fantasies or sexual behaviors involving a prepubescent child [under the age of 13] . . . [occurring] over the course of about six months," among other things. Such a disorder can predispose a person to commit a predatory act of sexual violence.

The offenses against the ten-year-old included several occasions over a period of months. According to the child, he and Reyes would play the "magnet game" in which the child would "put his head up against . . . Mr. Reyes' pants and they would pretend to be stuck together." Reed described this game as "grooming" the child. Reyes also exposed, on multiple occasions, his penis to the child. And, at least once, Reyes grabbed the child's head and pulled it towards his penis and wanted the child to put Reyes's penis in his mouth.

Reed testified that Reyes continued to deny any intentional sexual act against the child, claimed there was only one instance, and maintained there was nothing sexual about it. Those responses, in her view, were "partial acceptance and partial denial." This

was concerning because even after 20 years in prison and with treatment, he remained unable or unwilling to admit the extent of what he did. This does not, she explained, "bode well for him not committing it again if he doesn't understand why he did it in the first place." Additionally, she noted that research showed that a male perpetrator having a male victim, such as here, increased the risk.[2]

The record also includes Reyes's written statement given in connection with the offenses. In it, he admitted to being addicted to sex and marijuana and acting before thinking. Significantly, he stated, "I believe that when it comes to sex it is an uncontrollable desire. When I have the thoughts[,] I act before thinking. I believe it is a mental thing and would like to find some treatment to over come [sic] this."

Reed also discussed the other sexual offense for which Reyes was convicted. It occurred shortly after engaging in sexual contact with the ten-year-old male mentioned above and involved sexual contact with Reyes's three-year-old daughter. The child told her mother that Reyes was rubbing his penis on her vagina. Reyes initially told Reed that he did expose his penis to his daughter after her bath but did so because "he thought it would be funny." He denied any contact. At the time of Reyes's deposition, however, he admitted to placing his penis on the child's vagina, having lascivious thoughts, and pondering boyfriends who will someday engage in similar activity with her. So too did he proclaim a lack of sex with his partner and his need for sex.

_____

[2] She also explained that Reyes had not committed another sexually violent offense against a child because he has been in prison and does not have access to children. But, he was "still struggling with the minimization, denial of the offenses themselves"; so, she believed the condition was still present.

It was concerning to Reed that he engaged in sexual contact with children while having an adult partner. Simply put, he had "access to an appropriate aged consenting partner and he's engaging in sexual acts with children instead." Further, the behavior was of import since he moved from offending against a ten-year-old boy to a three-year-old girl; that indicated escalation. It showed "a change or shift in the severity or the nature of the offending." That Reyes continued to minimize and deny the totality of the offenses, posed another risk factor, according to Reed. One cannot avoid repeating a behavior when one does not 1) understand its cause, 2) admit to all of it, and 3) determine how to prevent it.

Other disorders were also diagnosed by Reed. In her opinion, Reyes suffered from unspecified personality disorder with antisocial and borderline traits. They depicted a "pattern of problems in how you see yourself, how you relate to others and how you view the world. So it's characterological personality pathology that is kind of developed over the course of your lifetime usually." In turn, borderline personality disorder involved unstable or intense interpersonal relationships as well as problems with mood regulation. Of further concern to her was his 1) history of engaging in other illegal behavior and convictions thereof, 2) lack of remorse, 3) hesitance to assume responsibility, 4) impulsivity, and 5) history of aggressiveness.

Reyes's use of cannabis while committing sexual offenses was also telling to her. If he relapsed into drug use, his risk level for reoffending would increase. Reyes himself buttressed this opinion by stating that his marijuana use led to sex addiction. But, he eschewed treatment because he believed it unnecessary. And, according to the expert,

6

despite his receipt of sexual offender treatment, he did not internalize any of it. This was so because he did not believe he needed such treatment and was not a sex offender.

Reed summarized her opinion concerning Reyes's having a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. She said:

> for him it's the sexual deviance that we talked about already as well as these personality disorders. And they play off of each other. So somebody that has sexually deviant thoughts, fantasies, urges, somebody that has a personality that allows them to violate others, to violate the rights of others, to hurt other people and act out in impulsive and at times aggressive ways. The combination of those two things I thought made up the behavioral abnormality.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that Reyes suffered from a behavioral abnormality that made him likely to re-engage in a predatory act of sexual violence. We therefore find that the State presented legally sufficient evidence to support the jury's finding. *In re Stoddard*, 619 S.W.3d at 676 (so defining the legal sufficiency test). And, considering evidence contradicting the verdict, that evidence is not so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met. Thus, the decision found support in factually sufficient evidence, as well. *Id.* (so defining the test for factual sufficiency).

Each issue is overruled, and we affirm the order of the trial court.

Per Curiam

7