

# NUMBER 13-24-00143-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE THE COMMITMENT OF PAUL PAWLAK

---

## ON APPEAL FROM THE 347TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Chief Justice Contreras**

The trial court found appellant Paul Pawlak to be a sexually violent predator (SVP) and ordered him indefinitely committed for sex-offender treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. ch. 841 (SVP Act). On appeal, Pawlak argues there was legally insufficient evidence to support the trial court's finding beyond a reasonable doubt. We affirm.

## I. BACKGROUND

The State of Texas filed its petition to civilly commit Pawlak on November 29, 2022. The petition alleged that Pawlak was imprisoned after being convicted on October 9, 2014, for four counts of sexual assault of a child and one count of attempted sexual assault of a child. *See id.* §§ 841.002(8)(A), (E), 841.003(a)(1). The State further alleged that Pawlak suffers from a behavioral abnormality which makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003(a)(2). The petition noted that Pawlak was then incarcerated but that he could be released on parole before his sentence discharge date of July 13, 2024.

Pawlak was fifty-eight years old at the time of trial. He stated he assaulted or attempted to assault four different boys who ranged from fourteen years old to seventeen years old at the time the offenses were committed, and the offenses occurred in 1994, 2002, 2003, and 2008. During each offense, Pawlak picked the boy up in his car, took him to his house, drugged him with alcohol laced with benzodiazepines, and then sexually assaulted him while he was unconscious. Pawlak testified that he was charged with attempted sexual assault of a fifth boy, but the jury found him not guilty of the offense, and he denied ever sexually assaulting the fifth boy. After he was convicted, Pawlak's convictions were reversed on appeal "due to [the] admission of child pornography evidence at trial." *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (concluding that "the trial court abused its discretion when it admitted . . . 9,900 images of pornography without regard to the amount of evidence, kind of evidence, or its source, and over [Pawlak's] Rule 403 objection" and remanding to this Court for a harm analysis); *see also Pawlak v. State*, No. 13-10-00535-CR, 2014 WL 1370032, at *3 (Tex. App.—

2

Corpus Christi–Edinburg Apr. 3, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that the trial court's error caused harm and reversing and remanding for a new trial).[1] Subsequently, Pawlak entered into a plea agreement with the State and pled guilty to the charges in exchange for a recommendation of a sentence of fourteen years' imprisonment. The record reflects that he was convicted of the offenses on October 9, 2014, and was sentenced in accordance with the State's recommendation.

When asked at trial why he offended against these victims, Pawlak testified that he was "sick," and he had "issues." Pawlak stated that in each instance he "wasn't looking for a victim," the boy was "just . . . there," he had "just seen them on the street," or choosing to pick up the boy "was just kind of . . . random." He stated that he felt "horrible" after sexually assaulting each of the boys and understood in the moment that it was "[m]orally, ethically" wrong.

Pawlak also testified about two alleged unadjudicated offenses. After Pawlak was arrested for the aforementioned offenses, his former girlfriend's sister's boyfriend, formally accused Pawlak of sexually assaulting him as a teenager in the 1990s. The complaint was not pursued, and Pawlak denied ever assaulting him. In 2005, Pawlak was arrested for unlawful restraint against A.C.[2] Pawlak stated that A.C. was an adult and he met him as he was leaving a gay bar. Pawlak testified that he took A.C. to his house and that the encounter with him was initially consensual, but A.C. "at some point . . . overtook

---

[1] Pawlak's penitentiary packet was admitted into evidence, which included his sexual assault convictions and a conviction dated September 17, 2010, for possession of child pornography.

[2] To preserve the complainant's privacy, we refer to him by his initials. *See* TEX. R. APP. P. 9.8 cmt.; *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (nothing that the comment to Texas Rule of Appellate Procedure 9.8 does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances).

[him], threw [him] on the floor, and attempted . . . to choke [him]." Pawlak said he eventually "overpowered" A.C. and grabbed a gun he had in his home, and A.C. ran out of his house naked. Pawlak denied forcing A.C. into his bedroom or coercing him in any way. When asked why he was never charged with any offense arising from this incident, Pawlak stated: "Because there was nothing to be charged for. . . . [I]t was a consensual situation. . . . [H]e was embarrassed by it so I'm sure he probably didn't say any of that."

While in prison, Pawlak completed a nine-month sex offender treatment program (SOTP). He explained that the SOTP taught him about "thinking errors," which are "[i]rrational beliefs that you develop from unmet needs, [or] issues." Pawlak testified about how he felt unloved and unwanted throughout his childhood, and he had "a void" in his life. He testified that he became a Christian in 1986, which filled the void in him "to a point." He stated that he now understands that the void was from a "distortion about [him]self" and he "recognize[s] the problem within [him]." Pawlak testified that he learned to identify his own thinking errors and triggers for sexual offending. He identified his triggers as "15-, 16-year-old boys," alcohol, boredom, and, his strongest trigger, pornography. Pawlak stated that he has abstained from pornography while in prison and plans to abstain from pornography after his release.

Pawlak also testified about his alcohol abuse. He stated that he originally mixed benzodiazepines and alcohol together in an attempt to quit drinking, because he thought it would help him "stay sober for a couple of days," which he admitted was "a ridiculous assertion." Prior to his time in prison, Pawlak said he had only been sober for two or three days. Now, he has "been sober for 13-and-a-half years." He believes he does not need

4

treatment for substance abuse after his release "[b]ecause . . . [he's] involved in AA," and he is "adamantly opposed to any kind of alcohol and drugs."

The State asked Pawlak: "What would you do if you found yourself sexually attracted to a child in the free world?" Pawlak responded that he would remove himself, "thought-shift," and "apply all the principles that [he has] learned over the years." Pawlak testified that there is no risk of him reoffending because he has "learned how to recognize [his] signs" and "recognize [his] thinking errors quickly." He said he has "been using the tools, [and] the thought-shift, replacement therapy" from the SOTP, and he has "been practicing . . . relapse prevention strategy." He stated: "Although[] there's temptations all over, . . . [he's] just not the same person [he] was back then." He plans to "stay away" from adolescent boys. He admitted: "It's going to be hard not to be around . . . any young men, any kids."

Pawlak testified about other classes he voluntarily took throughout his years in prison, including "Cognitive Intervention," anger management, "Christian fundamentals," and "Quest for Authentic Manhood." He was also heavily involved in woodworking courses and plans to continue woodworking after his release. He testified that he was nominated to a leadership role in the SOTP to help motivate other participants and plans to be obtain a leadership role in the sex offender halfway house after he is released on parole. After his time at the hallway house, Pawlak said he intends live with his sister in Dallas while he searches for employment opportunities.

Dr. Michael Arambula, a forensic psychiatrist, evaluated Pawlak for a behavioral abnormality as defined by the SVP Act. Dr. Arambula testified that he has been evaluating sex offenders for a behavioral abnormality for about twenty-five years and has evaluated

5

over 300 individuals. Dr. Arambula explained that he starts with "a general psychiatric exam" in these types of evaluations. Before meeting with the individual sex offender, he looks at their records, including their "developmental history," "academic history," "occupational histories," "medical history," their sexual offense history, and their history in prison. He said he pays "particular attention" to the individual's response to the SOTP. Dr. Arambula then analyzes the individual's risk factors to determine how likely they are to reoffend. He testified that research shows a greater risk of recidivism when the victims are boys instead of girls, and when the victim is a stranger as opposed to a family member. He also looks at factors that support a lower risk of recidivism, including whether the individual has a stable relationship with others, has a positive history in prison, lacks a nonsexual criminal record, and has a support system outside of prison.

Dr. Arambula met with Pawlak virtually on February 26, 2023, and interviewed him for two hours. After assessing Pawlak's records and conducting the interview, Dr. Arambula concluded that Pawlak "has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence."

Dr. Arambula said that Pawlak "did not have much antisocial personality history," because he "was successful in school, college, business"; he "took a number of classes" in prison; "[h]e was involved in religious activities, as well [as] AA"; and "he has a good support system" in place after his release. He explained that Pawlak does not have a specific personality disorder. However, he found that Pawlak exhibits certain features of other disorders such as "narcissism" and "histrionic borderline" personality disorder, and he "has some psychopathic traits." Dr. Arambula diagnosed Pawlak with unspecified personality disorder, alcohol use disorder, and "unspecified paraphilic disorder," which is

6

an attraction to children between the ages of fourteen to seventeen years old. Dr. Arambula also stated that Pawlak's medical records show he has anxiety, and he is "somatic," meaning that he "has physical symptoms" related to anxiety "but there's not any pathology to back it up." He stated that Pawlak's medical records indicated that he may have an "extreme form of being somatic where somebody has a disability of some sort but it's unconscious" because he has been seen using his walker inconsistently.

However, Dr. Arambula testified that Pawlak's sexual deviancy is "severe" because he has a high number of victims, the offenses occurred over a long period of time, and the victims were drugged and assaulted while unconscious. He explained that he found it concerning that Pawlak could not understand why he selected his victims, that he could not admit his attraction to teenage boys in some circumstances, and that "[h]e hadn't identified any emotional triggers." He said that Pawlak identified child pornography and alcohol as triggers, but those are external triggers and do not cause someone to be a sex offender.

He also testified extensively about what he perceived as a sudden, unusual change in Pawlak's behavior in his pretrial deposition. Dr. Arambula testified that the deposition, which occurred after his evaluation of Pawlak, "was very different" than his experience interviewing Pawlak. He explained: "[P]receding that deposition [Pawlak] was very angry, he was a victim of the system, things like that; and then . . . during the time period of the deposition, I detected a change in his demeanor. He seemed more calm. He was getting it."

Finding it "peculiar" that Pawlak would change "so quickly," Dr. Arambula began to review Pawlak's "monitored telephone calls." He testified that the phone calls after the

7

deposition showed Pawlak "was still angry about where he was, the system against him, [that] he was the victim, despite all the improvement . . . in his deposition." He said that in the phone calls, Pawlak said civil commitment was "a sham," "frivolous," and "[a] money-making operation" for the State. Dr. Arambula said: "Instead of owning up to what he had started to do, which was impressive to me, . . . now he was a victim." Dr. Arambula opined that it was as though the lessons Pawlak learned in the SOTP "just didn't stick."

After reviewing the phone calls, Dr. Arambula testified that he spoke with Pawlak's SOTP provider and looked at her treatment notes. He learned that Pawlak initially "was very angry and resisted treatment," he "was teaching other people how to beat civil commitment," "he was very threatening," and he was almost discharged from the program. At the beginning of the SOTP, Pawlak had little "remorse or empathy for [his] victims, and . . . said the victims agreed to come to his home. . . . He didn't think that they would feel [or remember] anything." Then, about six months into the nine-month program, Pawlak went "from being hostile to, 'Oh, I get this.'" He stated that Pawlak's SOTP provider "was as amazed as [he] was" by Pawlak's improvement. He asked the provider

> based on her experience, what . . . are the flips due to, and she sa[id] [a] small population . . . are genuine, in other words, a person can change suddenly like that. But . . . most of the people . . . said, "You know what, I need to behave or I'm going to look bad in court," or something.

He clarified that the SOTP provider passed Pawlak in the program and "she didn't say one way or another that [whether Pawlak] was genuine or not genuine."

Dr. Arambula said that Pawlak's deposition did not change his mind or his original conclusion that Pawlak is an SVP. He concluded that Pawlak is a menace to the health and safety of others because "the research shows that his risk for recidivism and the severity of his sexual deviance is high," and while Pawlak has "made some progress in

8

treatment," it is "not enough progress to manage his illness." He testified that in his opinion, Pawlak is part of the small but extremely dangerous group that the SVP statute targets, and he requires more sex offender treatment.

Pawlak testified during recall that, among other things, he has changed. He stated that there are seventeen-year-olds in prison, some who look younger than their age, and he does not associate with them at all. He testified that he feels no sexual attraction towards teenage boys anymore, and "[w]hatever was in [him], whatever was causing [him] to be attracted to [them]" is "not there." He emphasized that the reason he chose his victims at the time was because they were "vulnerable, they were easy targets, [and] there was no accountability." He stated that there was no "temptation" to reoffend or assault anyone anymore, and if there were, he would stop himself by "thought-shift[ing]" and "turn[ing] away."

After hearing the testimony from Pawlak and Dr. Arambula, the trial court held that Pawlak is an SVP under the statutory definition. It then ordered him indefinitely committed under the SVP Act. This appeal ensued.

## II.    SUFFICIENCY OF THE EVIDENCE

By his sole issue on appeal, Pawlak argues the evidence is legally insufficient to support his involuntary confinement.

## A.    Standard of Review & Applicable Law

The SVP Act provides a procedure for the involuntary civil commitment of an SVP. TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153; *see also In re Commitment of Hull*, No. 13-17-00378-CV, 2019 WL 3241883, at *1 (Tex. App.—Corpus Christi–Edinburg July 18, 2019, pet. denied) (mem. op.) (detailing the background and purpose of SVP statutes

9

in Texas). The statute was enacted based on legislative findings that "a small but extremely dangerous group of [SVPs] exists" and that "those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001; *see Kansas v. Crane*, 534 U.S. 407, 413 (2002) (holding that a similar statute satisfies constitutional due process only when there is "proof of serious difficulty in controlling behavior").

Under the SVP Act, a person may be civilly committed if the factfinder determines beyond a reasonable doubt that the person is an SVP. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.062, .081; *see also In re Commitment of Hull*, 2019 WL 3241883, at *8. An SVP is defined as a person that (1) is a "repeat sexually violent offender," and (2) "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

In a legal sufficiency review of SVP civil commitment proceedings, we review the evidence using the appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any

rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*; *see In re Commitment of Stoddard*, 619 S.W.3d 665, 676 (Tex. 2020). We must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so" and "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re Commitment of Stoddard*, 619 S.W.3d at 674.

## B. Analysis

Pawlak argues that the evidence was legally insufficient to prove that he "suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence" because Dr. Arambula did not diagnose him as "antisocial." He concedes that the SVP Act does not require any particular mental health diagnosis to prove that an individual has a behavioral abnormality, but contends that "due process . . . requires a coupling of dangerousness and some other factor (like mental illness or mental abnormality)." *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a); *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (stating generally that the United States Supreme Court has "sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality'"). He argues that "the State failed to offer legally-sufficient 'proof of dangerousness'—i.e., antisociality," and thus, failed to establish that he suffers from a behavioral abnormality as defined by the SVP Act.

The SVP Act "merely establishes *what* the State must prove, not *how* the State must go about proving it." *In re Commitment of Dever*, 521 S.W.3d 84, 87 (Tex. App.— Fort Worth 2017, no pet.). Though Dr. Arambula did not diagnose Pawlak with a specific

11

personality disorder, he found that Pawlak exhibits certain features of personality disorders, and he diagnosed Pawlak with unspecified paraphilic disorder. He testified extensively about how he concluded that Pawlak suffers from a behavioral abnormality, including examining Pawlak's records, interviewing Pawlak, listening to his monitored phone calls, and investigating Pawlak's response to the SOTP. He identified and discussed the various "risk factors" that he relied upon to form and to support his opinion, including Pawlak's "severe" sexual deviance and Pawlak's inability to recognize his internal or emotional triggers that might cause him to reoffend. He also testified about Pawlak's "flip" in behavior during the SOTP treatment, finding that the lessons Pawlak learned in the SOTP did not stick with him.

As Pawlak concedes, the State was not required to show that Pawlak suffers from some type of "antisocial" disorder to prove that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003. The evidence is not rendered legally insufficient solely because Dr. Arambula did not diagnose Pawlak with a specific personality disorder. *See id.*; *In re Commitment of Dever*, 521 S.W.3d at 87.

Ultimately, the trial court was entitled to resolve conflicts and contradictions in the evidence by believing all, some, or none of the testimony. *See In re Commitment of Stoddard*, 619 S.W.2d at 674. The trial court chose to accept Dr. Arambula's testimony as credible. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could have found, beyond a reasonable doubt, that Pawlak suffers from a behavioral abnormality that makes him likely to engage in a predatory act

12

of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003; *In re Commitment of Dever*, 521 S.W.3d at 87–88.

Pawlak also argues the evidence is legally insufficient to sustain his conviction "because Dr. Arambula's undisputed testimony" failed to show that he is a repeat sexually violent offender. He points to two excerpts from Dr. Arambula's testimony:

| [Counsel]: | [I]sn't it true that most convicted sex offenders do not go on to commit sexually violent offenses? |
| --- | --- |
| [Dr. Arambula]: | Particularly with the first-time offenders, that's correct; most do not. |
| [Counsel]: | And when you say "first-time offenders," do you mean the first time they've gotten at—caught, charged, and convicted? |
| [Dr. Arambula]: | First-time sex offenders, yes. Yes, ma'am. Any of the above. |
| . . . . | |
| [Counsel]: | [A]re you familiar with the risk factor known as "persistence after punishment"? |
| [Dr. Arambula]: | You mean as, like, a psychological test or— |
| [Counsel]: | "Persistence after punishment" means someone who recidivates after serving time in prison for a sex offense. |
| [Dr. Arambula]: | Yes. Being on some sort of supervision, that can be a risk factor—an aggravating risk factor, yes, ma'am. |
| [Counsel]: | So this is Mr. Pawlak's first time in prison, correct? |
| [Dr. Arambula]: | Correct. |
| [Counsel]: | So he's not someone who has recidivated after serving a prison sentence . . . and been released? |
| [Dr. Arambula]: | Correct. |

13

| [Counsel]: | So he does not carry this major risk factor known as "persistence after punishment"? |
|---|---|
| [Dr. Arambula]: | With regard to punishment, correct. |

Pawlak argues that these excerpts "conclusively" show that Pawlak is a first-time sex offender.[3] In other words, Pawlak argues he is not a repeat sexually violent offender because "he was not caught, convicted, and punished for sex" more than once.

As stated above, the State had the burden to prove beyond a reasonable doubt that Pawlak is a "repeat sexually violent offender." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). A person is a "repeat sexually violent offender" if the person is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b). Pawlak does not dispute that, in 2014, he was convicted and sentenced on four counts of sexual assault of a child and one count of attempted sexual assault of a child. These are offenses which the SVP defines as a "sexually violent offense." *Id.* § 841.002(8)(A), (E).

Further, Texas courts have consistently rejected the argument that the SVP Act requires an individual to offend, be imprisoned, be released, and then reoffend, to be a "repeat sexually violent offender." *See In re Commitment of Smith*, 562 S.W.3d 800, 804–

---

[3] Pawlak did not include the following testimony, which immediately proceeds the first quoted excerpt, wherein Dr. Arambula refutes the idea that Pawlak is a first-time sex offender:

| [Counsel]: | And Mr. Pawlak in that case would be a first-time sex offender— |
|---|---|
| [Dr. Arambula]: | No. |
| [Counsel]: | —because this was—this is the first time he's been charged, caught, and convicted? |
| [Dr. Arambula]: | No. I don't look him—at him as a first-time sex offender because he has multiple sexual convictions. |

14

06 (Tex. App.—Amarillo 2018, no pet.) (rejecting appellant's argument that he was not a repeat sexually violent offender "because he was convicted on a single occasion of offenses against a single victim"); *see also In re Commitment of West*, No. 05-20-00604-CV, 2022 WL 2071789, at *1 (Tex. App.—Dallas June 9, 2022, no pet.) (mem. op.) (rejecting appellant's argument that the legislature intended the SVP Act "to include only those recidivists who persist in reoffending after receiving punishment for a prior conviction" because "[a]ccepting his argument would mean adding an element to the statutory definition—that the offender's second conviction must stem from an offense that occurred after the first conviction and sentence"); *In re Commitment of Gunter*, No. 11-20-00253-CV, 2022 WL 3902735, at *4–5 (Tex. App.—Eastland Aug. 31, 2022, no pet.) (mem. op.) (same); *In re Commitment of Thompson*, No. 06-20-00024-CV, 2020 WL 6066205, at *2–3 (Tex. App.—Texarkana Oct. 15, 2020, pet. denied) (mem. op.) (same). Thus, Pawlak is a "repeat sexually violent offender" as defined by the SVP Act.

We conclude the evidence is legally sufficient to support the trial court's finding that Pawlak is an SVP. *See* Tex. Health & Safety Code Ann. § 841.003(a); *In re Commitment of Stoddard*, 619 S.W.2d at 674; *In re Commitment of Dever*, 521 S.W.3d at 87–88. We overrule Pawlak's sole issue.

### III. Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
14th day of November, 2024.

15